# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DARYL R. DUNCAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 08-cv-315-JPG |
| | ) |
| ROGER E. WALKER, JR., et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, formerly an inmate in the Vienna Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; this action is subject to summary dismissal.

**MEDICAL TREATMENT**

In June 2006, while he was in the East Moline Correctional Center, Plaintiff injured his left arm and foot while cutting grass. From the complaint, it appears that Plaintiff received medical treatment as he was transferred to various institutions, until his arrival at Vienna on January 15, 2008. He now alleges that he has received no medical treatment at Vienna for this injury. About a month after his arrival at Vienna, Plaintiff slipped on the stairs, injuring his back. He was placed on medical observation following this fall, but he believes he should have been taken to an outside hospital. Plaintiff states that he filed grievances about medical care on February 1, March 30, and April 14 of 2008. Apparently dissatisfied with the initial response, he filed this lawsuit on April 28, 2008.

Pursuant to 42 U.S.C. § 1997e(a), an inmate complaining of the conditions of his confinement must exhaust his administrative remedies **prior to filing suit**. Failure to so exhaust is grounds for summary dismissal of the complaint. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Lewis v. Washington*, 300 F.3d 829, 834 (7th Cir. 2002); *Ester v. Principi*, 250 F.3d 1068, 1071 (7th Cir. 2001); *Bigboy v. Smith*, 210 F.3d 374 (7th Cir. 2000).

The Illinois Administrative Code sets forth the grievance procedures to be followed by committed persons. *See* 20 Ill. Adm.Code § 504.800 *et seq*. An inmate first must take his complaint to a correctional counselor for informal resolution.[1] If this does not resolve the problem, he is to file a written grievance on an institutional form within sixty days of the incident or occurrence complained of, and that grievance should be addressed to the Grievance Officer. Each institution

---

[1] If deemed an emergency presenting "a substantial risk of imminent personal injury or other serious or irreparable harm to the offender," an inmate may send his grievance directly to the warden. 20 Ill. Adm.Code § 504.840.

has one or more designated Grievance Officers who review such grievances. The Grievance Officer reports his or her findings and recommendations to the Chief Administrative Officer, *i.e.*, the warden, and the warden is to advise the inmate of his or her decision within two months after receipt of the grievance, "where reasonably feasible under the circumstances."

The inmate may appeal the warden's disposition of the grievance in writing to the Director of the Department of Corrections within 30 days of the warden's decision. The Director reviews the grievance and the responses of the Grievance Officer and warden, and determines whether the grievance requires a hearing before the Administrative Review Board ("ARB"). If it is determined that the grievance is without merit or can be resolved without a hearing, the inmate is to be advised of this disposition in writing. Otherwise, the grievance is referred to the ARB, which may hold hearings and examine witnesses. The ARB submit a written report of its findings and recommendations to the Director, and the Director then makes a final determination within six months after receipt of the appealed grievance, "where reasonably feasible under the circumstances." 20 Ill.Adm.Code §§ 504.810-850.

A failure to exhaust administrative remedies in a timely manner may lead to dismissal of the action without consideration of the merits, absent any waiver, estoppel and equitable tolling. *See Ester v. Principi,* 250 F.3d 1058, 1071 (7th Cir. 2001); *Gibson v. West*, 201 F.3d 990, 993-94 (7th Cir. 2000); *White v. Bentsen*, 31 F.3d 474, 474-76 (7th Cir. 1994). Further,

> unless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred. Any other approach would allow a prisoner to "exhaust" state remedies by spurning them, which would defeat the statutory objective of requiring the prisoner to give the prison administration an opportunity to fix the problem – or to reduce the damages and perhaps to shed light on factual disputes that may arise in litigation even if the prison's solution does not fully satisfy the prisoner. *See Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Booth v. Churner,* 532 U.S. 731, 121

S.Ct. 1819, 149 L.Ed.2d 958 (2001).

*Pozo v. McCaughtry,* 286 F.3d 1022, 1023-24 (7th Cir. 2002). Thus, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Id.* at 1025. Furthermore, "[a] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1977e(a) from litigating. Failure to do what the state requires bars, and does not just postpone, suit under § 1983." *Id.* at 1023-1024.

From the pleadings and exhibits, as well as the various time periods specified in the Illinois procedures, it is abundantly clear that Plaintiff did not fully exhaust his administrative remedies about medical care at Vienna **before** filing this lawsuit. Although exhaustion of remedies is an affirmative defense, the Court need not wait for a party to raise it if the failure to exhaust is clear on the face of the complaint. Thus, the Court finds that Plaintiff did not exhaust his administrative remedies before filing suit; thus his medical claim is **DISMISSED** from this action. Once he has fully exhausted his remedies, Plaintiff may bring this claim in a new lawsuit, if he so desires.

## **DISCIPLINARY TICKET**

On February 19, 2008, Plaintiff issued a disciplinary ticket for insolence and threats, which was issued by Defendant Jones, the law librarian. He was found guilty of insolence and punished with three days in segregation, a month of yard restriction, and 14 days of commissary restriction.

When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her

4

confinement impose "atypical and significant hardship...in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Seventh Circuit Court of Appeals has adopted an extremely stringent interpretation of *Sandin*. In this Circuit, a prisoner in disciplinary segregation at a state prison has a liberty interest in remaining in the general prison population only if the conditions under which he or she is confined are substantially more restrictive than administrative segregation at the most secure prison in that state. *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). If the inmate is housed at the most restrictive prison in the state, he or she must show that disciplinary segregation there is substantially more restrictive than administrative segregation at that prison. *Id.* In the view of the Seventh Circuit Court of Appeals, after *Sandin* "the right to litigate disciplinary confinements has become vanishingly small." *Id.* Indeed, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty." *Id.*

In the case currently before the Court, Plaintiff was sent to disciplinary segregation for three days. Nothing in the complaint or exhibits suggests that the conditions that he had to endure while in disciplinary segregation were substantially more restrictive than administrative segregation in the most secure prison in the State of Illinois. Therefore, Plaintiff's due process claim is without merit, and it is **DISMISSED** with prejudice.

### TRUST FUND ACCOUNT

Plaintiff's final claim involves the manner in which the trust fund officer at Vienna garnishes his account for payment of filing fees to the United States District Court for the Central District of Illinois. He believes that his $15 monthly state pay is the only income subject to the 20%

assessment, and he is upset that the 20% assessment is also placed against monetary gifts. He asserts that the court's order states that 20% of his income is to be assessed, and he argues that monetary gifts do not constitute "income." Plaintiff is incorrect.

> Congress did not define the term "income" in § 1915(b), but it used several related terms: "income," "deposits," and "amount in the account". These seem to be used as synonyms, which implies that "income" means "all deposits". A prison therefore "shall forward" (§ 1915(b)(2)) 20% of whatever sums enter a prison trust account, disregarding the source. That some receipts are gifts or bequests from family members does not shelter them from § 1915(b)(2), as the prison seems to have supposed.

*Lucien v. DeTella*, 141 F.3d 773, 776 (7th Cir. 1998). Thus, Plaintiff's claim regarding his court filing fees is without merit, and it is **DISMISSED** with prejudice.

### DISPOSITION

In summary, Plaintiff's complaint does not survive review under § 1915A. Accordingly, this action is **DISMISSED** with prejudice, and all pending motions are now MOOT. Plaintiff is advised that the dismissal of this action will count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).

**IT IS SO ORDERED.**

**Dated: March 11, 2009.**

                                                   s/ J. Phil Gilbert
                                                   **U. S. District Judge**